UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

JOE BALTAS,                          :
     Plaintiff,                    :    CIVIL ACTION NO.
                                 :    3:19cv1820 (MPS)
     v.                            :
                                   :
SCOTT ERFE, ET AL.,                  :
     Defendants.                   :

**RULING ON MOTION TO AMEND**

The plaintiff, Joe Baltas, is incarcerated in the Walker Building ("Walker") at MacDougall-Walker Correctional Institution in Suffield, Connecticut. He initiated this action by filing a 188-page complaint under 42 U.S.C. § 1983, the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1, the Prison Rape Elimination Act ("PREA"), 42 U.S.C. § 15601, and Article First, § 20 of the Connecticut Constitution against twenty-one employees of the State of Connecticut Department of Correction. The claims arose from the plaintiff's confinement at four different prison facilities over a period from July 2016 to October 2019.

On April 20, 2020, the court dismissed and severed multiple claims and defendants from the complaint and permitted the following claims to proceed: a First Amendment retaliation claim related to the plaintiff's transfer from Cheshire Correctional Institution ("Cheshire") to the MacDougall Building ("MacDougall") at MacDougall-Walker Correctional Institution in October 2016; a First Amendment free exercise of religion claim arising from the plaintiff's confinement at Garner Correctional Institution in November and December 2016; and First Amendment retaliation and free exercise of religion claims; Eighth Amendment deliberate indifference to medical and mental health needs, conditions of confinement, and excessive force

claims; and a Fourteenth Amendment procedural due process claim, arising from the plaintiff's confinement at Northern Correctional Institution ("Northern") from December 2016 to September 2017, to proceed against Commissioner Semple, Deputy Commissioner Rinaldi, District Administrator Quiros, Director of Offender Classification and Population Management ("OCPM Director") Maiga, Wardens Erfe, Falcone, and Mulligan, Captain Robles, Lieutenant Arzt, and Nurse Nancy Hill in their individual capacities. *See* Ruling and Order, ECF No. 18, at 79-82. On July 23, 2020, the defendants filed an answer to the complaint. *See* ECF No. 38.

The plaintiff seeks leave under Rule 15(a)(2) of the Federal Rules of Civil Procedure to file an amended complaint to reassert claims that the court dismissed from the complaint and to add new claims. For the reasons set forth below, the court denies the motion to amend.

## I.      Standard of Review

If the time during which a pleading may be amended as a matter of course has passed, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "[M]otions to amend should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party." *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *accord McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200-01 (2d Cir. 2007).

## II.     Discussion

The plaintiff seeks to file an amended complaint to correct deficiencies that resulted in the dismissal of three Fourteenth Amendment equal protection claims and a Fourteenth

2

Amendment due process claim related to his placement on Administrative Segregation ("AS")

Status at Northern in January 2017, to reassert his deprivation of property claim, and to reinstate

his claim for injunctive and declaratory relief.  The plaintiff also seeks leave to assert new claims

under the Connecticut Constitution and the Administrative Procedures Act and to make stylistic

and grammatical changes.  *See* ECF No. 78 at 2-4.  The plaintiff has attached a 234-page

proposed amended complaint to his motion.  *See* ECF No. 78-1.

### A.    Fourteenth Amendment Equal Protection Claims

To state an equal protection claim, a plaintiff must allege facts showing that: (1) he was

treated differently from similarly situated individuals and (2) that the discriminatory treatment

was based on "'impermissible considerations such as race, religion, intent to inhibit or punish the

exercise of constitutional rights, or malicious or bad faith intent to injure a person.'"  *Diesel v.*

*Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (quoting *LeClair v. Saunders*, 627 F.2d 606,

609-10 (2d Cir. 1980).       Absent allegations to support "class-based" discrimination, an

individual may state an equal protection claim by alleging that he or she has been intentionally

and "irrationally singled out as a . . . class of one."  *Engquist v. Or. Dep't of Agric.,* 553 U.S. 591,

601 (2008).  A plausible class of one claim requires the plaintiff to demonstrate an

"'extremely high degree of similarity'" with the person to whom he or she is comparing himself

or herself.  *Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010) (quoting

*Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006)).  Thus, the plaintiff must

demonstrate the existence of a person who is "prima facie identical" to him or her and who was

treated differently.  *Hu v. City of New York*, 927 F.3d 81, 92 (2d Cir. 2019) (internal quotation

marks and citation omitted).

The plaintiff raised the following Fourteenth Amendment equal protection claims in the complaint: during his confinement at Northern in 2016 and 2017 on AS Status, Commissioner Semple, Deputy Commissioner Rinaldi, District Administrator Quiros, Warden Mulligan, and Captain Robles treated him differently than inmates confined on Special Needs Management Status or Special Circumstances Status; during his confinement at Cheshire from July to October 2016, Warden Erfe and District Administrator Quiros required him to wear a yellow jumpsuit; and in connection with his placement on administrative segregation status in January 2017, Warden Falcone, District Administrator Quiros, and OCPM Director Maiga discriminated against him based on his ancestry. ECF No. 1 ¶¶ 266, 277, 301. The court dismissed all three claims as implausible or for failure to state a claim upon which relief may be granted. ECF No. 18 at 26-28, 39-41, 70-72.

## 1.     Jumpsuit

The plaintiff alleges that on July 11, 2016, prison officials at MacDougall transferred him to Cheshire. ECF No. 78-1 ¶ 29. During his confinement at Cheshire, Warden Erfe required him to wear a yellow jumpsuit because he had been designated as a High Security Status inmate. *Id.*, ¶¶ 30-32. The plaintiff endured verbal taunts and harassment from other prisoners and staff members because of the jumpsuit, engaged in an at least one altercation with another prisoner after an argument regarding the jumpsuit, and had trouble exercising in the jumpsuit because it was too big for him. *Id.* ¶¶ 44-45. The plaintiff spoke to Warden Erfe and filed grievances about the requirement that he wear a yellow jumpsuit as well as the verbal and physical harassment that he had endured. *Id.* ¶¶ 46-47. Warden Erfe denied the grievances. *Id.* ¶ 47. District Administrator Quiros upheld the decisions of Warden Erfe on appeal. *Id.* ¶ 48.

4

The plaintiff alleges that Inmate Derrick Taylor has been designated as a high security inmate for over ten years and has been permitted to always wear the standard khaki inmate uniform.  *Id.* ¶ 35.  Although prison officials may have designated Inmate Taylor as a high security inmate over ten years ago, there are no allegations that Taylor was confined at Cheshire from July to October 2016 when Warden Erfe allegedly required the plaintiff, as a high security inmate, to wear a yellow jumpsuit.  Thus, the plaintiff has not alleged that an inmate essentially identical to him was confined at Cheshire during the period in question and was treated differently.  The facts asserted in the amended complaint do not state a plausible class-based equal protection claim or a plausible class of one equal protection claim against either Warden Erfe or District Administrator Quiros.  Thus, it would be futile to permit the plaintiff to reassert this claim in an amended complaint.

The plaintiff also contends that wearing the jumpsuit violated his First and Eighth Amendment rights.  *Id.* ¶¶ 201-02. There are no facts to state a claim under the First Amendment.  The plaintiff alleges that the jumpsuit made it difficult for him to exercise because it was too big and was hot and that he engaged in altercations with other inmates because of the jumpsuit.  He suffered some minor bruises and abrasions and mental distress.  These allegations do not state a claim that the requirement that he wear the jumpsuit deprived him of a life necessity or basic human need or subjected him to a serious risk of harm to his health or safety.  *See Rhodes v. Chapman*, 452 U.S. 337, 345–47 (1981) (To satisfy the objective component of an Eighth Amendment claim, a prisoner must demonstrate that his or her conditions of confinement alone or in combination resulted in "unquestioned and serious deprivations of basic human needs" or "deprive[d] [him or her] of the minimal civilized measures of life's necessities.").

5

Thus, the plaintiff has not asserted facts to demonstrate that wearing the jumpsuit caused him to suffer a sufficiently serious deprivation of health or safety. Thus, he has not met the objective component of an Eighth Amendment conditions claim. It would be futile to permit the plaintiff to add this claim against Warden Erfe and District Administrator Quiros.

### 2.     Ancestry

The plaintiff alleges that on December 21, 2016, Warden Falcone sent a memorandum to District Administrator Quiros and OCPM Director Maiga requesting that he be considered for AS placement because of his violent behavior and gang influence. *Id.* ¶ 35; Ex. 2. The plaintiff contends that in approving Warden Falcone's request that he be considered for placement on AS, District Administrator Quiros and OCPM Director Maiga discriminated against him based on his ancestry because they relied on a statement made by his father, in a presentence investigation report, to conclude that he had influence with the Diablos Motorcycle Club. The plaintiff's father, now deceased, was the founder of a Connecticut chapter of the Diablos Motorcycle Club. *Id.* ¶¶ 73-74, 186; Ex. 2.

The plaintiff asserts this discrimination claim under the First and Fourteenth Amendments of the United States Constitution. There are no facts to support a claim under the First Amendment. Thus, it would be futile to permit the plaintiff to assert this claim of discriminatory treatment under the First Amendment.

As he did in the complaint, the plaintiff contends that Warden Falcone, District Administrator Quiros, and OCPM Director Maiga discriminated against him by attributing his father's involvement in the Diablos Motorcycle Club to him in deciding whether to consider him for placement on AS. There are no new facts to suggest that Warden Falcone, District

6

Administrator Quiros, and OCPM Director Maiga relied on the plaintiff's ancestry, parentage, national origin, ethnicity, or race in determining that he should be considered for AS placement in December 2016.  Nor has the plaintiff identified any other similarly situated inmates who were treated differently than he was to support either a class-based or a class of one equal protection claim.  Thus, the facts do not support a plausible claim that Warden Falcone, District Administrator Quiros, and OCPM Director Maiga discriminated against the plaintiff because of his ancestry or parentage in connection with his placement on AS.  It would be futile to permit the plaintiff to reassert this Fourteenth Amendment equal protection claim.

### 3.    Conditions of Confinement

The plaintiff states that inmates who were placed on Special Needs Management Status at Northern in 2016 and 2017 were subjected to less restrictive conditions than the inmates like him who were confined on AS Status at Northern.  *Id.* ¶¶ 134-36.  He contends that there is no basis for the difference in treatment between inmates placed on AS Status and inmates placed on Special Needs Management Status.  He also states that three inmates who were initially placed on AS Status were removed from or transferred to Special Needs Management Status at some point.  *Id.* ¶ 138.  The plaintiff has not alleged his membership in a suspect classification because prisoners in general are not a suspect class.  *See Graziano v. Pataki*, 689 F.3d 110, 117 (2d Cir. 2012).  Thus, he is proceeding under a class of one theory and must demonstrate the existence of a person who is "prima facie identical" to him and who was treated differently. *Hu*, 927 F.3d at 92.

Administrative Directive 9.4 sets forth the definition of Special Needs Management Status and the criteria for an inmate's placement on that status and provides that inmates who are

initially placed on AS and other restrictive statuses may be placed on Special Needs Management Status if the circumstances warrant that change in status. *See* Administrative Directive 9.4(3)(V) & (13); https://portal.ct.gov/DOC/AD/AD-Chapter-9. Although the definitions of Administrative Segregation Status and Special Needs Management Status are similar, they are not identical. *Id.* 9.4(3)(B) & (V). The fact that the other inmates who may have been placed on AS status were subsequently moved to Special Needs Status does not demonstrate that the plaintiff was treated differently than those inmates. The plaintiff has not asserted facts to suggest that these inmates were so similar to him as to raise an inference that his continued confinement on AS status lacks any reasonable nexus with legitimate governmental policies. Accordingly, he has not stated a plausible class of one equal protection claim based on the different conditions under which inmates designated to Special Needs Management Status are confined. It would be futile to permit the plaintiff to reassert this equal protection claim.

B.    **Fourteenth Amendment Due Process Claim – Placement on AS**

The plaintiff seeks to reassert his claim that OCPM Director Maiga and Deputy Commissioner Rinaldi did not afford him procedural due process in authorizing his placement on AS Status on January 12, 2017 after the hearing held on December 30, 2016. In reviewing this claim as asserted in the complaint, the court concluded that the allegedly restrictive conditions under which the plaintiff was confined on AS from January 2017 to September 2017 were sufficiently atypical and/or significant as compared to the basic conditions of prison life to give rise to a liberty interest in their avoidance. ECF No. 18 at 65-67. The administrative nature of the plaintiff's confinement dictated that the standard set forth in *Hewitt v. Helms*, 459 U.S. 460 (1983) was applicable to his claim that the process or procedures provided to him in connection

8

with the hearing and the decision made to determine whether to place him on AS status were inadequate or insufficient.

In *Hewitt*, the Supreme Court held that prior to placing an inmate on administrative confinement, the inmate "must merely receive some notice of the charges against him and an opportunity to present his views [either orally or in writing] to the prison official charged with deciding whether to transfer him to administrative segregation." 459 U.S. at 476. If these requirements are met and the non-adversary proceeding is held "within a reasonable time following the inmate's transfer" to administrative segregation, "and the decisionmaker reviews the charges and then-available evidence against the prisoner, the Due Process Clause is satisfied." *Id.* & n.8. The court concluded that the facts asserted and the exhibits attached to the complaint demonstrated that the plaintiff had received the necessary procedural protections at the hearing and that the evidence presented at the hearing and considered by OCPM Director Maiga was sufficient to support his decision to authorize the plaintiff's placement on AS and Deputy Commissioner Rinaldi's decision to uphold that authorization. ECF No. 18 at 66-67.

In support of his request to reassert this procedural due process claim against OCPM Director Maiga and Deputy Commissioner Rinaldi, the plaintiff contends that his placement on AS Status was punitive. Therefore, the standard in *Wolff v. McDonnell,* 418 U.S. 539 (1974) rather than the standard in *Hewitt* applies to the hearing and the decision to determine whether to place him on AS Status.[1]  In *Wolff*, the Supreme Court held that an inmate charged with a

---

[1]  The plaintiff relies on the Second Circuit decision in *Almighty Supreme Born Allah v. Milling*, 876 F.3d 48, 55–56 (2d Cir. 2017) in support of his contention that AS is punitive. ECF No. 78 at 2. His reliance on *Allah* is misplaced as Allah was a pretrial detainee. The infliction of punitive conditions of confinement on a detainee constitutes a violation of substantive due process. 876 F.3d at 55 (citing *Bell v. Wolfish*, 441 U.S. 520, 535–36 (1979) ("In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether

disciplinary infraction is entitled to advance written notice of the charges against him; a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions taken. 418 U.S. at 563-67. Under both *Hewitt* and *Wolff*, however, the standard governing the type or amount of evidence required to support a decision to place an inmate on an administrative or disciplinary/punitive status is some reliable evidence. *See, e.g.*, *Superintendent v. Hill*, 472 U.S. 445, 454 (1985) (procedural due process requires a disciplinary decision affecting an inmate's liberty interest to be "supported by some evidence in the record" of the inmate's guilt); *Elder v. McCarthy*, 967 F.3d 113, 129–30 (2d Cir. 2020) ("In this Circuit . . . we have required that such disciplinary determinations be supported by some '*reliable* evidence' of guilt.") (quoting *Luna v. Pico*, 356 F.3d 481, 488 (2d Cir. 2004)); *Taylor v. Rodriguez*, 238 F.3d 188, 194 (2d Cir. 2001) (concluding that a prisoner facing confinement in close custody must be provided with a meaningful notice of the basis for the decision as well as a decision that is supported by "some evidence" that is "reliable") (citation omitted).

The plaintiff contends, as he did in the complaint, that there was insufficient reliable evidence to support Maiga's decision not to follow the recommendation of the hearing officer to suspend his placement on AS status. He has pleaded no new facts to demonstrate that reliable evidence did not exist to support Maiga's decision. Thus, the procedural due process claim, as asserted against OCPM Director Maiga and Deputy Commissioner Rinaldi in the motion to

---

those conditions amount to punishment of the detainee. For under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law.") (citations omitted)). At the time of the plaintiff's placement on AS status he had been sentenced to a total term of imprisonment of 115 years. *See* http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=339650.

amend and proposed amended complaint, is not plausible.

The plaintiff also contends that the decision by OCPM Director Maiga and Deputy Commissioner Rinaldi to authorize his placement on AS status was arbitrary in violation of his Fourteenth Amendment substantive due process rights.  ECF No. 78 at 3; ECF No. 78-1 ¶ 236. "Substantive due process protects individuals against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense ... but not against government action that is 'incorrect or ill-advised.'"  *Lowrance v. Achtyl*, 20 F.3d 529, 537 (2d Cir. 1994) (internal citations omitted).  To state a claim that an official's conduct violated substantive due process under the Fourteenth Amendment, a plaintiff must allege that a government official deprived him or her of a fundamental right and that the conduct of the official in doing so "was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Hurd v. Fredenburgh*, 984 F.3d 1075, 1087 (2d Cir. 2021) (internal quotation marks and citation omitted).  The plaintiff's allegations regarding his placement on AS status under restrictive conditions of confinement do not meet the conscience-shocking conduct necessary to state a substantive due process claim.  *See Sandin v. Connor*, 515 U.S. 472, 479 n.4 (1995) (identifying only two examples of conditions that would be shocking enough to violate a prisoner's right to substantive due process: a prison official's involuntary transfer of an inmate to a mental health hospital and a prison doctor's involuntary administration of psychotropic drugs to an inmate); *Lombardi v. Whitman,* 485 F.3d 73, 81 (2d Cir. 2007) ("In order to shock the conscience and trigger a violation of substantive due process, official conduct must be outrageous and egregious under the circumstances; it must be truly brutal and offensive to human dignity.") (internal quotation marks and alteration omitted).

11

Moreover, "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Albright v. Oliver,* 510 U.S. 266, 272–73 (1994).  The court reviewed the allegations pertaining to the restrictive conditions of confinement to which the plaintiff was subjected during his confinement on AS status under the Eighth Amendment.  ECF No. 18 at 45-61.  Thus, to the extent that the plaintiff seeks to add a Fourteenth Amendment substantive due process claim, such a claim is not plausible.

### C.      Fourteenth Amendment - Deprivation of Property Claim

The plaintiff alleges that on January 10, 2017, he received some of his personal property items including his clothes, food, books, magazines, headphones, a radio, and cosmetics.  ECF No. 78-1 ¶ 141.  He was not permitted to possess other items including his hardcover books, footwear, pillow, television, hot pot, video games, fan, beard trimmer, and electric razor.  *Id.* ¶ 142.  The plaintiff states that these items of property were stored during his confinement in the administrative segregation program and that he received these items of property back on October 5, 2017, after he completed the program.  *Id.* ¶ 193.  He contends that the deprivation of his personal property items was made pursuant an unauthorized and punitive practice of Warden Mulligan and Captain Robles.  *Id.* ¶¶ 142-43, 152-53.

The plaintiff included these allegations in the complaint but did not characterize the deprivation of personal property items as a due process claim but rather as an unconstitutional condition of confinement under the Eighth Amendment.  He contended that there was no legitimate reason for the confiscation and storage of these items during his confinement in the

administrative segregation program.  Rather, it was the defendant's intention to deprive him of these items as a form of cruel and unusual punishment.  The court concluded that the deprivation of these items did not constitute a deprivation of a basic human need in violation of the Eighth Amendment.  ECF No. 18 at 51-53.

The plaintiff seeks to reassert this deprivation of property claim as a claim that Warden Mulligan, and Captain Robles violated his right to due process under the Fifth and Fourteenth Amendment by refusing to permit him access to his property items during his ten-month confinement in the AS program from December 2016 to September 2017.  The Fifth Amendment is not applicable to this claim because the defendants are state employees.  *See Dusenbery v. United States*, 534 U.S. 161, 167 (2002) (holding that the Fifth Amendment's due process clause protects citizens only against the conduct of federal government officials, not state officials).  Thus, the Fifth Amendment claim is not plausible.

It is well-established that "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available."  *Hudson v. Palmer*, 468 U.S. 517, 533; *see also Edwards v. Erfe*, 588 F. App'x. 79 (2d Cir. 2015) (summary order) ("A prisoner may challenge the deprivation of property in a § 1983 action only if the State provides no adequate post-deprivation remedy.") (citation omitted).  Connecticut provides inmates with a remedy for lost or destroyed property.  *See* State of Connecticut Department of Correction Administrative Directive 9.6(16) (Aug. 15, 2013) (available on the Department of Correction's website under Directives and Policies at: https://portal.ct.gov/DOC/AD/AD-Chapter-9); Connecticut General Statutes § 4–141 *et seq*.  The

13

plaintiff contends that Department of Correction's lost property board and Connecticut Claim's Commission are only authorized to award monetary relief for the destruction or loss of personal property items by a state employee. Thus, neither the lost property board, nor the Claims Commission could provide him with an adequate post-deprivation remedy for the return of his property items that were stored during his confinement in the AS program.

In *Hudson*, however, the Supreme Court held that a prisoner's due process rights are not violated where adequate common-law remedies exist. 468 U.S. at 534–35. In Connecticut, the common law tort of conversion and that statutory remedy of replevin are available for a deprivation of personal property. *See, e.g.*, *Riddick v. Semple*, 731 F. App'x 11, 13–14 (2d Cir. 2018) (summary order) ("Riddick thus has an available remedy for any intentional tort claim [related to the destruction or damage to his personal property] that could not be reviewed by the Claims Commissioner—a lawsuit against the individual employees."); *Pascarelli v. Schwartz*, No. 3:14-CV-1123(AWT), 2017 WL 662899, at *2–4 (D. Conn. Feb. 17, 2017) ("Here, Connecticut's statutory cause of action for theft and common law cause of action for conversion each could have fully compensated the [plaintiff] for the property loss [that was] suffered. . . . Thus, Connecticut law provides an adequate postdeprivation remedy, and there is no procedural due process violation.") (citation omitted); *Deming v. Nationwide Mut. Ins. Co.*, 279 Conn. 745, 770, 905 A.2d 623, 639 (2006) (To succeed in a conversion claim, a plaintiff must allege that "one, without authorization, assumes and exercises ownership over the property belonging to another, to the exclusion of the owner's rights. . . . Thus, conversion is some unauthorized act which deprives another of his property permanently or for an indefinite time.") (citation omitted); Conn. Gen. Stat. § 52-515 ("The action of replevin may be maintained

to recover any goods or chattels in which the plaintiff has a general or special property interest with a right to immediate possession and which are wrongfully detained from him in any manner, together with the damages for such wrongful detention."). Because the plaintiff had an available remedy under state law to redress the deprivation of his personal property items during his confinement on AS in 2016 and 2017, he has not stated a plausible Fourteenth Amendment due process claim. It would be futile to permit him to add this claim to an amended complaint.[2]

C.      **Requests for Injunctive and Declaratory Relief**

The plaintiff seeks to reinstate his requests for injunctive and declaratory relief related to his confinement in various prison facilities in Connecticut in 2016 and 2017. The court dismissed the requests for declaratory relief because the plaintiff had not alleged an ongoing violation of his constitutional rights and dismissed the requests for injunctive relief as moot because the plaintiff was no longer confined at a facility within the State of Connecticut. ECF No. 18 at 21-25. The plaintiff contends that the requests for declaratory and injunctive relief sought in the complaint are not moot because he will eventually be transferred back to a Connecticut prison facility. In fact, on July 26, 2021, the plaintiff informed the Clerk that he had been transferred from Virginia to Walker.

---

[2] In addition to the Fifth and Fourteenth Amendments, the plaintiff asserts this deprivation of property claim under the First and Fourth Amendments as well as Article First § 7 of the Connecticut Constitution. *Id.* ¶¶ 258-60. There are no facts to state a claim under the First Amendment. Furthermore, any Fourth Amendment unauthorized seizure claim is not plausible. The Supreme Court has held that "the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell." *Hudson*, 468 U.S. at 526. Nor does the Fourth Amendment apply when property is taken from an inmate's cell. *See id.* at 528 n.8 ("the same reasons that lead us to the conclude that the Fourth Amendment's proscription against unreasonable searches is inapplicable in a prison cell, apply with controlling force to seizures"); *see also Conquistador v. Syed*, No. 3:19-CV-1450 (KAD), 2020 WL 229319, at *4-5 (D. Conn. Jan. 15, 2020) (items taken during prisoner's transfer did not implicate a Fourth Amendment seizure). To the extent that the plaintiff is asserting a search or seizure claim under Article First, § 7 of the Connecticut Constitution, which essentially mirrors the Fourth Amendment's search and seizure clause and provides in pertinent part "[t]he people shall be secure in their persons, houses, papers and possessions from unreasonable searches or seizures," that claim also is not plausible.

15

The claims that proceed in this action arise from the plaintiff's transfer from Cheshire to MacDougall at the end of October 2016, his confinement at Garner in November and December 2016, and his confinement at Northern in 2016 and 2017. The plaintiff completed the administrative segregation program at the end of September 2017 and as of October 2017, he was confined at Cheshire. Thus, at the time that the plaintiff filed this action in 2019, the alleged violations of his constitutional rights that occurred during his confinement at Cheshire, Garner, and Northern in 2016 and 2017 were not ongoing. Accordingly, no basis exists to permit the plaintiff to reinstate any requests for injunctive relief or to assert new requests for injunctive or declaratory relief related to conditions of confinement that occurred at Cheshire, Garner, and Northern in 2016 and 2017.

### D.    Claims Under the APA

The plaintiff has alleged that the yellow jumpsuit requirement imposed on him by Warden Erfe was not mandated or authorized under Department of Correction Administrative Directive 6.10 and violated the APA. ECF No. 78-1 ¶¶ 32-34, 202. The plaintiff also contends that the Department of Correction Administrative Directives governing the placement of inmates on AS violate the APA because they contain overly broad language. *Id*. ¶¶ 262-63.

The plaintiff cannot assert a claim under the federal APA, which applies only to federal agencies. *See* 5 U.S.C. § 551 (defining agency). Further, even if the Court construed the plaintiff's allegations to assert a violation of the state Uniform Administrative Procedure Act ("UAPA"), Connecticut General Statute § 4-166, the claims would not be cognizable because the UAPA does not apply to the Department of Correction's Administrative Directives under Connecticut law. "The directives 'are created for the internal management of the correctional

16

institutions and are not regulations that are subject to the [Uniform Administrative Procedure Act ("UAPA")] requirements.'" *Cooke v. Deschaine*, No. 3:16-CV-138 (SRU), 2017 WL 1628400, at *4 (D. Conn. Apr. 28, 2017) (quoting *Pierce v. Lantz*, 113 Conn. App. 98, 104–05, *cert. denied*, 293 Conn. 915 (2009)).  Accordingly, it would be futile to permit the plaintiff to add claims under the APA.

      **E.**    **Claims Asserted Under the Connecticut Constitution**

      The plaintiff seeks to reassert claims under Article First § 20 of the Connecticut Constitution and to add claims under Article First §§ 7, 8 and 9 of the Connecticut Constitution. In a prior section of this ruling, the court addressed the plaintiff's search and seizure claim under Article First § 7, of the Connecticut Constitution in connection with his allegation of an unauthorized deprivation of his personal property items and found the claim not to be plausible.

      Article First, § 8 provides in pertinent part: "No person shall be ... deprived of life, liberty or property with due process of law...."  Conn. Const. art. 1, § 8.  Article First § 9 provides: "No person shall be arrested, detained or punished, except in cases clearly warranted by law."  Conn. Const. art. 1, § 9.  Article First § 20 provides that: "[n]o person shall be denied equal protection of the law nor be subjected to segregation or discrimination in the exercise or enjoyment of his or her civil or political rights because of religion, race, color, ancestry, national origin, sex or physical or mental disability."  Conn. Const. art. 1, §20.

      **1.**    **Article First Sections Eight and Twenty**

      In reviewing the claims asserted in the complaint under Article First § 20, the court observed that no Connecticut court had recognized a private right of action under the provision and declined to exercise supplemental jurisdiction over potential claims asserted under that

17

provision because the claims would give rise to new and undeveloped issues under state law. *See* ECF No. 18 at 74-75.  The plaintiff asserts no new facts to suggest that a private right of action exists under Article First § 20.

Similarly, research reveals no cases in this court or the Connecticut courts that have recognized a private right of action under Article First, section 8 of the Connecticut Constitution. *See, e.g., Harnage v. Shari*, No. 3:16CV1576(AWT), 2019 WL 7835666, at *5–7 (D. Conn. Dec. 3, 2019) ("There are no cases in which a Connecticut court has recognized a private right of action under Article First, § 8 of the Connecticut Constitution.") (collecting cases); *Richard v. Strom*, No. 3:18-CV-1451 (CSH), 2018 WL 6050898, at *8 (D. Conn. Nov. 19, 2018) (concluding "[t]here is no established private right of action under the religious discrimination, due process, or equal protection provisions (Article First §§ 3, 8, and 20)"); *Lopez v. Smiley*, 375 F. Supp. 2d 19, 23-26 (D. Conn. 2005) (declining to exercise supplemental jurisdiction over novel, complex and undeveloped claims under Article First, §§ 4, 5, 7, 8, 9, and 14).  The court concludes that it would be inappropriate to exercise supplemental jurisdiction over potential claims under Article First § 8 of the Connecticut Constitution that raise new and undeveloped issues under state law.  *See* 28 U.S.C. § 1367(c)(1) ("The district courts may decline to exercise supplemental jurisdiction over a claim" that "raises a novel or complex issue of State Law. . . .").  Thus, it would be futile to permit the plaintiff to reassert claims under Article First § 20 of the Connecticut Constitution or to assert new claims under Article First § 8 of the Connecticut Constitution.

### 2.     Article First, Section Nine

In *Binette v. Sabo*, 244 Conn. 23, 41-47, 710 A.2d 688, 693-99 (1998), the Connecticut

18

Supreme Court relied on *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), to recognize a private cause of action for monetary damages against municipal police officers for violations of Article First, §§ 7 and 9 of the Connecticut Constitution that arose out of an alleged unreasonable search and seizure and unlawful arrest of the plaintiff.  In reaching its decision, the Connecticut Supreme Court "emphasize[d] that [its] decision to recognize a *Bivens*-type remedy in this case does not mean that a constitutional cause of action exists for every violation of our state constitution." *Id.* at 47, 710 A.2d at 700.

There are no Connecticut cases recognizing a private right of action for money damages under Article First, § 9 of the Connecticut Constitution for punishment suffered by an inmate during his confinement in a state prison facility due to deliberate indifference to his health or safety, placement in a restrictive housing unit or the temporary confiscation of items of personal property.  *See, e.g., Holley v. Cook*, No. 3:20CV170 (MPS), 2020 WL 6532842, at *3–4 (D. Conn. Nov. 5, 2020) ("Although the Connecticut Supreme Court created a cause of action under Article First, sections 7 and 9 for a *Bivens*-type claim, it has not applied section 9 in the context of a case filed by an inmate in connection with his classification or his conditions of confinement. Therefore, the court declines to exercise supplemental jurisdiction over the claim asserted pursuant to Article First, sections 9 of the Connecticut Constitution.") (citing *Torres v. Armstrong*, No. CV990427057S, 2001 WL 1178581, at *1, 6-7 & n.6 (Conn. Super. Ct. Sept. 6, 2001) (narrowly construing *Binette* in a civil action asserting claims of violations of an inmate's rights under the United States and Connecticut Constitutions, including claims of "cruel and unusual punishment under the federal constitution" and a claim of a deprivation "of his rights under ... article first, § 9" of the state constitution, and "declin[ing] to recognize [a] damages

action[ ] under the Connecticut and United States constitutions under the circumstances of th[e] case"). Absent a Connecticut case in which a judge has construed a complaint filed by an inmate involving claims challenging AS placement, restrictive, unsafe, and unhealthy conditions of confinement, the use of restraints, or the confiscation of personal property, to raise a private cause of action under Article First, § 9 of the Connecticut Constitution, the court concludes that it would be inappropriate to exercise supplemental jurisdiction over the claim seeking money damages from defendants for a violation of this state constitutional provision. *See* 28 U.S.C. § 1367(c)(1). Thus, it would be futile to permit the plaintiff to add claims under Article First, § 9 of the Connecticut Constitution.

### F.     Other Claims

In addition to the claims addressed above, the court notes that the proposed amended complaint includes First, Fourth, Fifth, and Eighth Amendment claims raised in connection with the plaintiff's allegations regarding his placement in AS under restrictive conditions and his placement in a recreation yard cage near an inmate who engaged in sexually explicit behavior that were dismissed from the complaint as not plausible. Complaint. ¶¶ 125, 135, 160, 304-05; Proposed Am. Complaint ¶¶ 131, 148, 150-51, 172, 174-76, 253; Ruling and Order, ECF No. 18, at 49-59. The plaintiff does not refer to these claims in the motion to amend or assert any new facts to support the plausibility of these claims. *See* ECF No. 78-1 ¶¶ 131, 170-76; 245-49, 253-54. The court concludes that it would be futile to permit the plaintiff to reassert these First, Fourth, Fifth, and Eighth Amendment claims that were dismissed from the complaint as not plausible.

The proposed amended complaint also includes a Fourteenth Amendment equal

protection claim that was not asserted in the complaint and is not referenced in the motion to amend. *Id.* ¶¶ 222, 237. The claim arises from the plaintiff's placement on AS Status on January 11, 2017. The plaintiff contends that another inmate, who engaged in threatening and assaultive behavior at Garner in December 2016 was not placed on AS status and that a different inmate, designated as a Security Risk Group Threat Member, was initially placed on AS Status in February 2005 by OCPM Director Leveseque due to the inmate's involvement in a gang-related altercation with other inmates in the recreation yard but was removed from that status in March 2005 by Levesque *Id.* ¶¶ 69, 126. The plaintiff fails to provide any basis to justify the addition of this new equal protection claim at this stage of the proceedings. Because it is apparent that the claim would be barred by the three-year statute of limitations applicable to section 1983 actions[3] and the facts asserted do not meet the stringent standard for stating a class of one equal protection claim, it would be futile to permit the plaintiff to add this claim. In addition, to permit the addition of this claim at this stage of the proceedings would unnecessarily delay the case and prejudice the Defendants as it would require additional discovery.

---

[3] In Connecticut, the three-year limitations period set forth in Conn. Gen. Stat. § 52-577 is applicable to claims asserted under section 1983. *See Lounsbury v. Jeffries*, 25 F.3d 131, 132-34 (2d Cir. 1994). The date on which a section 1983 claim accrues, however, is a "question of federal law." *Wallace v. Kato*, 549 U.S. 384, 388 (2007). In determining whether an action is barred by the statute of limitations, a federal cause of action accrues "when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." *Id.* (internal quotation marks and citations omitted). Put another way, "accrual occurs when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Hogan v. Fischer,* 738 F.3d 509, 518 (2d Cir. 2013) (internal quotation marks and citation omitted). The statute of limitations ordinarily is an affirmative defense. If the allegations asserted in the complaint demonstrate that the relief sought is barred by the applicable statute of limitations, however, a district court may dismiss the complaint *sua sponte* on that ground. *See Walters v. Industrial and Commercial Bank of China, Ltd.*, 651 F.3d 280, 293 (2d Cir. 2011) (A district court "may dismiss an action *sua sponte* on limitations grounds in certain circumstances where 'the facts supporting the statute of limitation defense are set forth in the papers plaintiff himself submitted.'") (quoting *Leonhard v. United States*, 633 F.2d 599, 600 n.11 (2d Cir. 1980)); *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) (holding that a district court may dismiss a complaint on initial review based on a defense, such as the statute of limitations, that appears on the face of the complaint).

## CONCLUSION

The Motion for Leave to File an Amended Complaint, [**ECF No. 78**], is **DENIED.**

SO ORDERED at Hartford, Connecticut this 31st day of August, 2021.

_____/s/_____
Michael P. Shea
United States District Judge