**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| JOE BALTAS, | : | No. 3:19-cv-01820 (MPS) |
| *Plaintiff,* | : | |
| | : | |
| v. | : | |
| | : | |
| SCOTT ERFE, et al., | : | JUNE 19, 2026 |
| *Defendants.* | : | |

## DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO RULE 50(b)

Pursuant to Fed. R. Civ. Pro. 50 (b), Defendants Angel Quiros, William Mulligan, and Gregorio Robles[1] respectfully renew their motion for judgment as a matter of law. For the reasons contained herein, Defendants' motion should be granted, and judgment should enter in their favor on all of Plaintiff's claims.

As articulated more fully below, Defendants are entitled to judgment as a matter of law for several reasons. First, there was no evidence to support a claim that any of the defendants deprived the plaintiff of a basic human need under the Eighth Amendment or exposed him to a substantial or unreasonable risk of serious damage to his health by the claims in this case. Further, as an overarching matter, Defendants are entitled to qualified immunity on all claims because it is not clearly established that it is an Eighth Amendment violation to cancel inmate outside recreation for a valid penological reason, especially when inmates have other opportunities for exercise. Second, plaintiff cannot establish that the occasional

---

[1] On April 18, 2025, the Court granted Plaintiff's motion to substitute Charles Kurmay, Administrator of the Estate of Gregorio Robles, Jr., as a party defendant in lieu of Gregorio Robles, Jr. pursuant to Fed. R. Civ. P. 25(a)(1). ECF No. 398. For the sake of brevity Defendants refer to the Estate of Gregorio Robles simply as Gregorio Robles or Robles throughout this motion.

1

substitution of items from trays, especially in the absence of injury, establish an Eighth Amendment violation.

Additionally, on the issue of personal involvement, all Defendants are entitled to qualified immunity on plaintiff's food claim because there was no evidence that any Defendant was involved in the preparation or distribution or implementation of the menu for plaintiff's meals. Lastly, as to the recreation claims, Defendants Mulligan and Robles are entitled to judgment as a matter of law because Plaintiff failed to meet his burden to establish their personal involvement in any aspect of his recreation claim. For these reasons, as discussed more fully below, Defendants respectfully request the Court grant this motion and enter judgment in their favor.

I.    **BACKGROUND[2]**

Following the close of evidence, the jury returned a verdict and was discharged by the court on May 22, 2026. The jury found no liability for any alleged Eighth Amendment violations against Defendant Semple or Defendant Rinaldi. See ECF Nos. 582. However, the jury determined that Defendants Quiros, Mulligan, and Robles violated plaintiff's Eighth Amendment rights. *Id.* The jury awarded Plaintiff nominal damages in the amount of $10.00 against Quiros, Mulligan and Robles and punitive damages against the same three defendants. See ECF No. 275.

After returning this verdict, the jury considered two special interrogatories relating to the specific basis to support Plaintiff's Eighth Amendment claim. See ECF

---

[2] In the interest of brevity, the Defendants do not set forth a summary of all the substantial facts and evidence presented in this case. Rather, Defendants will cite to relevant additional facts from evidence in this matter throughout the brief as needed.

No. 582-1. With respect to both questions, the jury indicated that Defendant Mulligan and Robles violated Plaintiff's Eight Amendment rights as a result of the "[d]eprivation of Plaintiff Baltas's nutritionally adequate food" and "[d]epravation of Plaintiff Baltas's recreation time." *Id.*

Judgment in accordance with the verdict entered on May 26, 2026. See ECF No. 584.

## II.    ARGUMENT

### A.    Standard of Review

"Rule 50(a) permits a district court to enter judgment as a matter of law against a party on an issue where there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." *James v. City of Alb.*, 833 F. App'x 346, 347 (2d Cir. 2021) (quoting *Cobb v. Pozzi*, 363 F.3d 89, 101 (2d Cir. 2003)); *see also Wierzbic v. Howard*, 836 F. App'x 31, 34 (2d Cir. 2020) ("Judgment as a matter of law [pursuant to Rule 50(b)] is appropriate when a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue.').

A district court should grant such a motion "if there exists such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or the evidence in favor of the movant is so overwhelming that reasonable and fair minded [persons] could not arrive at a verdict against [it]." *Kinneary v. City of N.Y.*, 601 F.3d 151, 155 (2d Cir. 2010) (quoting *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 133 (2d Cir. 2008)).

Here the defendant orally moved for judgment as a matter of law after the plaintiff rested and after the close of evidence. This Court reserved decision on those motions.

"A defendant may file a renewed motion for judgment as a matter of law no later than 28 days after the jury was discharged, if the defendant moved for JMOL before the case was submitted to the jury pursuant to Rule 50(a)." *Perez v. Cnty. of Rensselaer*, 858 F. App'x 12, 13 (2d Cir. 2021) (citing Fed. R. Civ. P. 50(a)(2), (b)). In reviewing a Rule 50(b) motion, "'[t]he court must consider the evidence in the light most favorable to the non-movant and give that party the benefit of all reasonable inferences that the jury might have drawn in his favor from the evidence,' bearing in mind that a jury is free to believe or disbelieve any part of a witness's testimony." *Levans v. Delta Airlines, Inc.*, No. 12-cv-0773(NG)(VMS), 2016 U.S. Dist. LEXIS 190991, 2016 WL 9447211, at *3 (E.D.N.Y. July 29, 2016) (quoting *Zellner v. Summerlin*, 494 F.3d 344, 371 (2d Cir. 2007)).

**B.  There Was No Evidence that Could Support a Finding that Quiros, Mulligan, or Robles Violated Mr. Baltas' Eighth Amendment Right to be Free from Cruel and Unusual Punishment.**

To state an Eighth Amendment claim for unconstitutional conditions of confinement, an inmate must allege facts supporting an objective element—that "the deprivation was sufficiently serious that he was denied the minimal civilized levels of life's necessities"—and a subjective element—that the defendant "acted with a sufficiently culpable state of mind, such as deliberate indifference to inmate health or safety." *Wash. v. Artus*, 708 F. App'x 705, 708 (2d Cir. 2017) (summary order)

4

(quoting *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (internal quotation marks omitted)).

**1.    Defendants are entitled to judgment as a matter of law because plaintiff cannot establish a constitutional violation based on lack of adequate nutrition.**

The Eighth Amendment requires "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well-being of the inmates who consume it." *Al-Bukhari v. Semple*, No. 3:15-cv-322 (SRU), 2018 U.S. Dist. LEXIS 162297, 2018 WL 4539661, at \*6 (D. Conn. Sept. 21, 2018) (quoting *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983)) (internal quotation marks omitted). Here, there was no evidence offered that the meals offered to Mr. Baltas presented any danger to his health - let alone presented an imminent serious risk to his health.

The occasional deprivation of nutritionally adequate food or the provision of inedible food at a single meal does not constitute an Eighth Amendment violation. *See Id.* (citing cases finding that an occasional deprivation of meals does not state an Eighth Amendment claim); *see also Roundtree v. City of New York*, No. 15-cv-8198, 2018 U.S. Dist. LEXIS 51919, 2018 WL 1586473, at \*8 (S.D.N.Y. Mar. 28, 2018) (single incident of contaminated food not a constitutional violation (citing *Lohman v. King Cty. Jail*, 2014 U.S. Dist. LEXIS 118572, 2014 WL 4187150, at \*3 (W.D. Wash. July 1, 2014) ("[N]either isolated instances of food poisoning, temporary lapses in sanitation, not occasional service of meals contaminated with foreign objects are sufficiently serious to rise to the level of a constitutional violation.")).

Here, there is no dispute that plaintiff received three meals each day while he was at Northern. It was stipulated that the DOC menus were developed by food services managers and supervisors and were approved by a registered dietician. There was no competent evidence offered to establish that any meals provided to the plaintiff were nutritionally inadequate as the plaintiff and all the defendants are not qualified to offer such opinion other than plaintiff's lay testimony that the daily calories were below estimates and guidelines for healthy eating patterns. Further, there is no evidence that Quiros, Mulligan, or Robles were involved in any way in the preparation of Baltas' food or in the development of the master menu or any substitutions on the menu.

In addition, to state a cognizable claim relating to food conditions, an inmate must allege that he suffered "a distinct and palpable injury." *Ford v. Aramark*, No. 18-cv-2696 (NSR), 2020 U.S. Dist. LEXIS 13174, 2020 WL 377882, at *6 (S.D.N.Y. Jan. 23, 2020) (citations and internal quotation marks omitted). *See also Constant v. Prack*, No. 16-cv-3985 (NSR), 2019 U.S. Dist. LEXIS 121629, 2019 WL 3287818, at *3, *15 (S.D.N.Y. July 19, 2019) (A conclusory allegation that the Plaintiff lost a significant amount of weight—or even that he lost 15 pounds in one month and 26 pounds in two months—may not by itself show that those conditions posed an unreasonable risk of serious damage to the plaintiff's health when defendants took action to address the deficiencies.) Plaintiff failed to make any showing of a distinct and palpable injury.

6

Finally, to satisfy the subjective component of the deliberate indifference claim, an inmate must allege that the defendant knew that the plaintiff faced a substantial risk to his health or safety and that the defendant disregarded that risk by failing to take corrective action. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994); *see also Phelps v. Kapnolas*, 308 F.3d 180, 185-86 (2d Cir. 2002) (defendant must have been "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed] and ... dr[e]w that inference"). In light of the foregoing, "courts impose a high bar to success on a conditions of confinement claim based on a theory that the food provided in a prison or jail was inadequate." *Rombousek v. Trinity Co.*, No. 21-CV-3672 (KMK), 2022 U.S. Dist. LEXIS 115279, 2022 WL 2343236, at *4 (S.D.N.Y. June 29, 2022).

Plaintiff failed to adduce sufficient evidence for either the objective or subjective elements of his Eighth Amendment claim. Starting with the objective, during trial plaintiff testified in purely conclusory terms that his "usual[]" caloric intake was between 1,400 – 1,600 calories, the "best ever" was 1,800 calories, and "one day" was 900 calories. ECF No. 588, Tr. Volume II, 195:11-18. Plaintiff admitted that he was not a nutritionist, and although he testified that he had a "nutritional book" which he used to calculate these values, he did not name the "book" or provide any specifics. *Id.* at 243:19-20; 192:2. In further support of his claim, plaintiff filed a grievance which he dated February 6, 2017. Pl. Tr. Ex. 7. This grievance indicates that "items [were] missing from [his] tray," and alleges that his "daily requirements" were not being met. Plaintiff made no mention of his caloric estimates and provided

7

only vague allegations about the issue he alleged he was grieving. *Id.* There is simply no competent evidence of the actual daily caloric intake provided to Mr. Baltas. Again, Plaintiff admitted that he received three meals each day while he was at Northern and never actually missed a full meal.

In addition, far from establishing any "palpable injury" plaintiff was only able to testify in general terms that he was "hungry" and experienced "hunger pain." ECF No. 588, Tr. Volume II, 189:9 – 10. Plaintiff did not provide any specific details about his weight but indicated that his weight when he left Northern was "closer to 205" lbs. *Id.* at 250:24 – 25; 251:1 – 2. In contrast Defendants introduced an exhibit that documented plaintiff weighed 220 lbs. on March 10, 2017. Def. Tr. Ex. 505, Pg. 2. It was undisputed that plaintiff was six feet tall. ECF No. 588, Tr. Volume II, 250:21 – 23. Even assuming plaintiff's weight was 205 lbs., coupled with a height of six feet, he would nevertheless be considered overweight.[3]

Here plaintiff's complaint of hunger alone is insufficient to establish the objective element of an Eighth Amendment violation. *See Sankara v. Montgomery*, Docket No. 9:16-CV-00885 (FJS/TWD), 2018 U.S. Dist. LEXIS 106638, at *25-26 (N.D.N.Y. June 25, 2018) (finding objective element unsatisfied where prisoner "testified at his deposition that he was hungry and emotionally frustrated as a result" of missing certain meals); *McFadden v. Keyser*, No. 23-cv-802 (NSR), 2025 U.S. Dist. LEXIS 51891, 2025 WL 846371, at *3 (S.D.N.Y. Mar. 18, 2025) ("Plaintiff complains that being fed food with allergens caused him stomach pains. Courts have previously

---

[3] Being six feet tall and weighing 205 lbs. would equate to a Body Mass Index of 27.8, which is considered overweight. See https://www.cdc.gov/bmi/adult-calculator/ (last visited June 17, 2026).

held that, without more, stomach pains are insufficient to serve as the predicate medical condition for an Eighth Amendment deliberate indifference claim." (citation omitted)); *Jallow v. Geffner*, No. 23-CV-3969 (LTS), 2024 U.S. Dist. LEXIS 2169, 2024 WL 37073, at *14 (S.D.N.Y. Jan. 2, 2024); *Edwards v. Horn*, No. 10 Civ. 6194 (RJS)(JLC), 2012 U.S. Dist. LEXIS 30968, 2012 WL 760172, at *9 (S.D.N.Y. Mar. 7, 2012) (adopting report and recommendation) ("[Plaintiff] does not allege that the alleged denials of food placed his health and wellbeing in any immediate danger.").

Turning to the subjective prong, plaintiff was required to prove that Defendants "kn[e]w[] of and disregard[ed] an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837, 114 S. Ct. 1970, 128 L. Ed. 2d 811. In contrast both Defendants Mulligan and Quiros testified that they relied on the food services staff at Northern. ECF No. 590, Tr. Vol. IV, Pg. 555, 3 – 7; ECF No. 589, Tr. Vol. III, Pg. 453, 12 – 14, 18 – 20. Evidence was also introduced that Defendant Robles relied on food services as well. Def. Tr. Ex. 503. Plaintiff was required to demonstrate that Defendants were both aware of a substantial risk of harm, and also that they drew the inference. *Farmer*, 511 U.S. 825, 114 S. Ct. 1970, 128 L. Ed. 2d 811. Plaintiff has flatly failed to meet that burden.

Here, again these supervisory defendants are not nutritional experts. They are entitled to rely on those experts who designed and prepared the meals for the inmates. The defendants likewise are entitled to rely on medical providers and/or mental health providers to advise them if an inmate such as Baltas has been subjected to a substantial risk to his health or safety. The undisputed evidence is that

9

no defendant was informed by these experts that Mr. Baltas was at substantial risk of harm based upon the food, cancellation of recreation or for that matter any other issue at Northern.

> **2.    Defendants are entitled to judgment as a matter of law because plaintiff cannot establish an Eighth Amendment violation based on an alleged deprivation of stimuli and social interaction with other inmates due to cancellations of outside recreation.**

The Second Circuit has recognized that, under the Eighth Amendment, "some opportunity for exercise must be afforded to prisoners." *Anderson v. Coughlin*, 757 F.2d 33, 35 (2d Cir. 1985). However, not every denial of physical exercise amounts to a constitutional violation. The Second Circuit has stated that "deprivations of physical exercise for short periods will not rise to constitutional dimension. . . ." *McCray v. Lee*, 963 F.3d 110, 117 (2d Cir. 2020) (holding that the plaintiff sufficiently alleged an Eighth Amendment claim when he asserted a complete denial of physical exercise for a four-month period). Prison officials also are permitted to limit the right to out-of-cell exercise where there is a valid safety exception, or in unusual circumstances. *Williams v. Greifinger*, 97 F.3d 699, 704 (2d Cir. 1996). Moreover, "[w]hile courts have found that denial of all opportunity to exercise violates an inmate's constitutional rights, they have found no violation where the inmate has an opportunity for exercise, either in or outside of his cell." *Kelly v. Miller*, Docket No. 9:25-CV-0206 (ECC/MJK), 2025 U.S. Dist. LEXIS 154191, at *6 (N.D.N.Y. Aug. 11, 2025); *see also Ruggiero v. Fischer*, Docket No. 15-CV-00962-RJA-JJM, 2018 U.S. Dist. LEXIS 168297, at *9 (W.D.N.Y. Sept. 27, 2018) (Plaintiff's ability to exercise in

10

his cell precluded finding that he was denied "all meaningful exercise for a substantial period of time.").

Importantly in this case, the Court and plaintiff framed the violation as a deprivation of meaningful stimuli and social interaction based upon the cancellations of recreation – not the opportunity to exercise. In fact, this Court failed to give the defendants' requested jury interrogatory as to whether plaintiff had the opportunity or ability to exercise in his cell. The "right to interaction with other inmates" and stimuli, fresh air and sunlight does not implicate a basic human need recognized under Eighth Amendment jurisprudence. Here, it is admitted that plaintiff was afforded the opportunity to attend outdoor recreation each week, but claims an Eighth Amendment violation because it was often cancelled.

On March 21, 2017, plaintiff filed a grievance concerning his recreation claim. Pl. Tr. Ex. 10. Although plaintiff did not provide specifics about the dates that recreation was cancelled, because the grievance was required to be filed "within 30 days of the occurrence or discovery of the cause of the grievance" the earliest date must be February 20, 2017.[4] Plaintiff transferred from Northern Correctional to MacDougall-Walker on May 2, 2017. ECF No. 590, Tr. Vol. IV, Pg. 558, 2 – 4. As a result, plaintiff alleges he was denied outdoor recreation—on some occasions[5]—

---

[4] Thirty days prior to March 21, 2017, is Sunday, February 19, 2017. Plaintiff indicates that the "unit rec schedule" was Monday – Friday, therefore, the earliest possible date would be Monday, February 20, 2017.

[5] Specifically, plaintiff testified that he was denied outdoor recreation between two, three, or five times per week. ECF No. 588, Tr. Vol. II, Pg. 178, 2 – 9.

during what amounts to, at most, a 71-day period. However, plaintiff also testified that he considered himself "moderately active." *Id.,* Pg. 195, 2.

In light of the foregoing, it cannot reasonably be said that plaintiff was denied "some" opportunity for exercise. Critically, the testimony at trial from plaintiff's witness was that at least according to the COs there were reasons why recreation was cancelled. ECF No. 588, Tr. Vol. II, Pg. 161, 23 – 25; 162, 1 – 2. According to Defendant Mulligan, recreation was only cancelled for "exigent circumstances" which included inclement weather. ECF No. 590, Tr. Vol. IV, Pg. 538, 19 – 25. In addition, as noted in *Baltas v. Chapdelaine*, 153 F.4th 328, 336 (2d Cir. 2025), the Second Circuit "has never held that [22 hours per day of social isolation] is cruel and unusual" under the Eighth Amendment.

### 3.   Defendants are entitled to judgment as a matter of law due to their lack of personal involvement in any constitutional violation.

In order to prevail in any of his claims, the plaintiff must establish each defendant's personal involvement in the denial of his rights. *Lawrence v. Finnucan*, No. 3:20-cv-1678 (VAB), 2021 U.S. Dist. LEXIS 87694, at *6 (D. Conn. May 7, 2021) (citing *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)); *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 135 (2d Cir. 2013).

A plaintiff, however, may not rely on a special test to establish a defendant's liability, but rather "must . . . prove the elements of the underlying constitutional violation *directly* against the official without relying on a special test for supervisory liability." *Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020) (emphasis added).

12

In other words, a plaintiff must establish not just that the defendants were aware of an alleged constitutional violation, or that a constitutional violation was committed by subordinates—rather, "[t]he violation must be established against the supervisory official *directly*." *Id.* (emphasis added). The focus is on what the supervisor did or caused to be done, "the resulting injury attributable to his conduct, and the *mens rea* required of him to be held liable, which can be no less than the *mens rea* required of anyone else." *Id.* at 618. In short, "a plaintiff must plead and prove 'that each Government-official defendant, *through the official's own individual actions*, has violated the constitution.'" *Gray v. Lamont*, No. 3:21-cv-00143 (VAB), 2021 U.S. Dist. LEXIS 96779, at *10 (D. Conn. May 21, 2021) (quoting *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020)) (emphasis added).

Importantly, concerning personal involvement and qualified immunity, to the extent any defendant is held liable based on their position in the prison hierarchy or based on any theory of liability other than by establishing their *direct participation* in a constitutional violation, the defendants are entitled to qualified immunity. Indeed, after *Tangreti*, it is not clearly established that a defendant's personal involvement may be established by reference to *Colon v. Coughlin*, 58 F.3d 865 (2d Cir. 1995) or the *Colon* factors,[6] including the third "unconstitutional custom or

---

[6] The five *Colon* factors were: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring. *Colon*, 58 F.3d at 873 (citations omitted).

policy" factor.[7] Thus, to the extent any or all of the Defendants' personal involvement was based upon on the third *Colon* factor or any "special test" to establish the personal involvement of any of the defendants, other than by establishing their *direct participation*, the Defendants are entitled to qualified immunity.

> **a.   No reasonable juror could find that Defendants Quiros, Mulligan or Robles were directly involved in any Eighth Amendment violation.**

As discussed above, the Second Circuit in *Tangreti* recognized that the *Colon* factors were no longer viable after *Iqbal* and held that a plaintiff must establish "'that each Government-official defendant, through the official's *own individual actions,* has violated the Constitution.'" *Tangreti*, 983 F.3d at 618 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)) (emphasis added)). Plaintiff utterly failed to meet his burden to demonstrate that either Defendant Quiros, Mulligan, or Robles participated in any direct act that could establish their personal involvement in any constitutional violation.

The claims against Defendant Quiros were strictly limited to the nutritional adequacy claim and based on his denial of plaintiff's Level 2 grievance appeal that Quiros responded to April 13, 2017 – approximately 17 days before Baltas transferred out of Northern . During the relevant period, Defendant Quiros testified that he was employed by the Department of Correction as a District Administrator. ECF No. 589, Tr. Vol III, Pg. 447:2 – 3. As District Administrator Defendant Quiros was not directly

---

[7] The only clear standard for personal involvement under *Tangreti* is "direct participation" which mirrors the first *Colon* factor. Nevertheless, as described above, the Second Circuit did not hold that any *Colon* factor survived *Tangreti*.

involved in the day-to-day operations of the facility and merely inadequately responding to a grievance is not sufficient to impose liability under the Eighth Amendment.

As to Defendant Mulligan, he testified that he was the warden at Northern Correctional between August 2016 until April 1, 2017. ECF No. 590, Tr. Vol. IV, Pg. 526, 12 – 14. With respect to recreation, Defendant Mulligan testified that he was not personally involved with managing recreation for inmates. *Id.,* Pg. 539, 17 – 20. Defendant Mulligan also testified that he was not personally in charge of the food at Northern, but instead food was the responsibility of the food services supervisors. *Id.,* Pg. 540, 6 – 12. Defendant Mulligan also testified that he did not personally have concerns about the food at Northern, and in fact, he noted it as being the facility where he received the "least. . . complaints about food." *Id.,* Pg. 542, 23 – 25; 543, 1. In addition, although plaintiff filed a grievance related to his complaints regarding recreation at Northern, this grievance was responded to by Defendant Mulligan's successor, Warden Fanueff. Pl. Tr. Ex. 10.

At bottom, plaintiff failed to put forth any evidence whatsoever that either Quiros, Mulligan, or Robles played any direct role in serving plaintiff's food, substituting or removing food from his tray, or denying his recreation. At most, the evidence showed that both Defendants were nothing more than "links in the chain of command," which is simply not enough to establish personal involvement and is foreclosed by *Tangreti. See Peters v. N.Y. State*, No. 22-CV-6373-DGL, 2022 U.S. Dist. LEXIS 200720, at *4 (W.D.N.Y. Nov. 2, 2022) ("it is not enough to assert that the

15

defendant is a link in the chain of command.") (citing *McKenna v. Wright*, 386 F.3d 432, 437 (2d Cir. 2004)). Such a claim is foreclosed by *Tangreti. See Rosa v. Cook*, No. 3:22CV00865(SALM), 2022 U.S. Dist. LEXIS 187178, at *22 (D. Conn. Oct. 13, 2022) (dismissing in IRO claims against a former Commissioner of Correction because "Plaintiff has not alleged that defendant [Commissioner] personally participated in any alleged constitutional violations. Indeed, there are no allegations at all as to this defendant."); *see also Jusino v. Quiros*, No. 3:21-cv-620 (SRU), 2021 U.S. Dist. LEXIS 212297, at *19-21 (D. Conn. Nov. 3, 2021) (dismissing Eighth Amendment solitary confinement claim against several defendants on personal involvement grounds under Tangreti where plaintiff provided only "conclusory allegations" but "failed to assert facts to suggest the direct involvement of [the defendants] in the alleged deprivation of his Eighth Amendment rights during his confinement at Northern"); *Conley v. Aldi*, No. 3:18-cv-00824 (VAB), 2021 U.S. Dist. LEXIS 105777, at *9-10 (D. Conn. June 4, 2021) (dismissing Eighth Amendment claim against supervisory prison official where plaintiff "[did] not allege that [official] was present at [facility] during his confinement there" and otherwise "alleged no facts to demonstrate [official's] direct involvement in imposing the conditions that he experienced during his confinement at [facility]" during relevant period).

Ultimately, in the absence of any evidence of a direct action taken by Defendants Quiros, Mulligan, or Robles which amounts to a violation of Plaintiff's rights, they are entitled to judgment. For this reason, judgment in favor of Quiros, Mulligan, and Robles should enter on all claims.

16

### C.    Quiros, Mulligan and Robles are Protected by the Doctrine of Qualified Immunity.

The issue of qualified immunity may properly be raised by way of a Rule 50 motion, including the issue of whether a state official's actions were objectively reasonable. *See Dorceant v. Aquino*, No. 15-CV-7103 (ARR) (LB), 2018 U.S. Dist. LEXIS 138186, 2018 WL 3869891, at *5 (E.D.N.Y. Aug. 15, 2018) (granting qualified immunity on a post-trial Rule 50(b) motion and explaining that "it is the court's responsibility to determine, based on undisputed facts or factual findings made by the jury, whether an officer's conduct was objectively reasonable"); *Guzman v. Jay*, 303 F.R.D. 186, 195 (S.D.N.Y. 2014) (granting qualified immunity on defendant's post-trial Rule 50(b) motion).

"[A]fter the district court receives 'the jury['s] . . . deci[sion as to] what the facts were that the officer faced or perceived,' the court then may 'make the ultimate legal determination of whether qualified immunity attaches on those facts.'" *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007) (quoting *Stephenson v. Doe*, 332 F.3d 68, 81 (2d Cir. 2003)). "A court should review the facts that are material to the qualified immunity issue, as resolved by the jury, to determine whether the officer's conduct was objectively reasonable." *Harewood v. Braithwaite*, 64 F. Supp. 3d 384, 396-97 (E.D.N.Y. 2014) (citing *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007)); *see also Lennon v. Miller*, 66 F.3d 416, 421 (2d Cir. 1995) (the ultimate question of entitlement to qualified immunity is one of law for the court to decide "[o]nce disputed factual issues are resolved" (internal quotation marks omitted)); *Warren v. Dwyer*, 906 F.2d 70, 76 (2d Cir. 1990) ("If there are unresolved factual issues which prevent

17

an early disposition of the defense, the jury should decide these issues on special interrogatories . . . . The ultimate legal determination whether . . . a reasonable police officer should have known he acted unlawfully" should be made by the court "on the facts found" by the jury.).

> **1.    Qualified immunity is a broad shield against liability that is deliberately forgiving and must be considered under the particularized facts of this case.**

Qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks & citation omitted). To overcome qualified immunity, a plaintiff must show that (1) the defendant violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct. *Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015) (citations omitted). In the qualified immunity context, a right is "clearly established" if, at the time of the challenged conduct, it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam). "To be clearly established, a legal principle must have a sufficiently clear founding in then-existing precedent [and] [t]he rule must be settled law, which means it is dictated by controlling authority or a robust consensus of cases of persuasive authority." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589-90 (2018).

"The Supreme Court has emphasized the breadth of qualified immunity protection." *Francis v. Fiacco*, 942 F.3d 126, 145 (2d Cir. 2019) (citing *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019) (per curiam); *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam)). It has also repeatedly, admonished lower courts "not to define clearly established law at a high level of generality." *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019) (citation omitted). Rather, "the clearly established law must be 'particularized' to the facts of the case." *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (citation omitted).

The qualified immunity analysis must be "particularized" in the sense that "'[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Doninger v. Niehoff*, 642 F.3d 334, 345-46 (2d Cir. 2011). "The question is not what a lawyer would learn or intuit from researching case law, but what a reasonable person in the defendant's position should know about the constitutionality of the conduct." *Id.* at 345. "This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Mullenix*, 136 S. Ct. at 308. While the Court "does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *White*, 137 S. Ct. at 551. That precedent "must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Francis*, 942 F.3d at 146 (citing *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018)).

19

Under the second prong of the qualified immunity analysis, "[e]ven where the law is 'clearly established' and the scope of an official's permissible conduct is 'clearly defined,' the qualified immunity defense also protects an official if it was 'objectively reasonable' for him at the time of the challenged action to believe his acts were lawful." *Taravella v. Town of Wolcott*, 599 F.3d 129, 134 (2d Cir. 2010). That is because qualified immunity "affords government officials 'breathing room' to make reasonable—even if sometimes mistaken—decisions." *DiStiso v. Cook*, 691 F.3d 226, 240 (2d Cir. 2012).

In this case, there is no clearly established precedent that would clearly establish that the menu designed and implemented by food services three times a day, coupled with access to commissary violated the Eighth Amendment. Likewise, there is no precedent that the occasional cancellation of outdoor recreation in these factual circumstances and under the claim as framed in this case, would make it clear to every reasonable officer that an Eighth Amendment violation occurred. This is precisely the type of situation in which qualified immunity was designed to provide protection.

"[Q]ualified immunity is a broad shield specifically designed to give public officials 'breathing room to make reasonable,' even if sometimes 'mistaken judgments' without fear of facing disabling liability." *Barboza v. D'Agata*, 676 F. App'x 9, 12-13 (2d Cir. 2017) (quoting *Messerschmidt v. Millender*, 565 U.S. 535, 553 (2012)). "Toward that end, the standard of review is deliberately 'forgiving,' providing 'ample protection to all but the plainly incompetent or those who knowingly violate the law.'"

20

*Id.* (quoting *Zalaski v. City of Hartford*, 723 F.3d 382, 389 (2d Cir. 2013); *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). In sum, it "ensure[s] 'that those who serve the government do so with the decisiveness and the judgment required by the public good.'" *Zalaski v. City of Hartford*, 723 F.3d 382, 389 (2d Cir. 2013) (quoting *Filarsky v. Delia*, 566 U.S. 377, 390 (2012)).

> **a.    Defendants Quiros, Mulligan, and Robles are entitled to qualified immunity because they were entitled to rely on their subordinate officers and food services staff and medical/mental health providers.**

The testimony demonstrated that Defendants Quiros, Mulligan, and Robles were supervisory officials who relied on their subordinates or in the case of meals, the assigned food services supervisors. Therefore, to the extent Defendants had any involvement in plaintiff's claims, based on their supervisory roles it was reasonable for them to rely on their subordinates. *See Baltas v. Jones*, Docket No. 24-100-pr, 2025 U.S. App. LEXIS 32676, at *8-9 (2d Cir. Dec. 15, 2025) ("Defendants are entitled to qualified immunity: reasonable officials at their level of seniority would not have known that they were themselves violating the Eighth Amendment by forwarding complaints to subordinates and doing nothing further.") As a result, judgment in favor of Quiros, Mulligan, and Robles should enter on all claims.

## III.    <u>CONCLUSION</u>

The Defendants respectfully request this Court grant their motion and direct judgment in their favor.

*Respectfully submitted,*
DEFENDANTS

WILLIAM TONG
ATTORNEY GENERAL


BY: /s/ Dennis V. Mancini

Dennis V. Mancini (ct30239)
Assistant Attorney General
State of Connecticut
Office of the Attorney General
165 Capitol Avenue
Hartford, CT 06106
E-Mail: dennis.mancini@ct.gov
Tel: (860) 808-5450
Fax: (860) 808-5591


/s/ Steven M. Barry

Steven M. Barry (ct07825)
Assistant Attorney General
State of Connecticut
Office of the Attorney General
165 Capitol Avenue
Hartford, CT 06106
E-Mail: steven.barry@ct.gov
Tel: (860) 808-5450
Fax: (860) 808-5591

## CERTIFICATION

I hereby certify that on June 19, 2026, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

*/s/ Dennis V. Mancini*

Dennis V. Mancini
Assistant Attorney General