**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| JOE BALTAS, | : | No. 3:19-cv-01820 (MPS) |
| *Plaintiff,* | : | |
| | : | |
| v. | : | |
| | : | |
| SCOTT ERFE, et al., | : | JUNE 19, 2026 |
| *Defendants.* | : | |

**DEFENDANT QUIROS, MULLIGAN, AND ROBLES**
**RULE 59 MOTION FOR A NEW TRIAL AND/OR REMITITTUR**

## I.    INTRODUCTION

The plaintiff, Joe Baltas brought this civil suit against several employees of

the State of Connecticut Department of Correction arising out his conditions of

confinement at the Northern Correctional Institution (hereafter "Northern"),

asserting that the defendants violated his rights under the Eighth Amendment to

the United States Constitution. Plaintiff specifically claimed that defendants

violated his right to be free from cruel and unusual punishment alleging that he

received nutritionally inadequate meals and that outdoor recreation was often

cancelled depriving him of sunlight, fresh air and social stimuli with other inmates

while he was in Phase 1 of the Administrative Segregation Program (hereafter

"AS") at the Northern Correctional Institution.[1]

The matter proceeded to a jury trial against former Commissioner Scott

Semple, former Deputy Commissioner Monica Rinaldi, District Administrator Angel

---

[1] Baltas was placed in AS in December 2016 for threatening to stab an officer in the neck with a shank as well as based on a violent institutional disciplinary history including assaults and possession of weapons in a correctional facility.

Quiros (now former Commissioner Quiros, Warden William Mulligan (now Deputy Commissioner), and the administrator of the estate of former Northern Captain Gregorio Robles. After four days of evidence, the jury found in favor of defendants Semple and Rinaldi. The jury found in favor of plaintiff as against defendant Quiros, Mulligan, and Robles; and after finding no compensatory damages, awarded him $10.00 in nominal damages and a total of $130,000 in punitive damages.

Defendants Quiros, Mulligan, and Robles now move for a New Trial and/or Remittitur under Rule 59.

## II.    LEGAL STANDARD AND ARGUMENT

### A.    Rule 59 – Motion for New Trial/Remittitur Legal Standard

Rule 59 of the Federal Rules of Civil Procedure provides: "A new trial may be granted. . . for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed.R.Civ.P. 59(a). Generally, a motion for a new trial should be granted when the trial court concludes that "the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice." *DeFalco v. Bernas*, 244 F.3d 286, 305 (2d Cir. 2001) (quoting *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 911 (2d Cir. 1997)). "A new trial may be granted, therefore, when the jury's verdict is against the weight of the evidence." *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 133 (2d Cir. 1998)

> The standards governing a district court's consideration of a Rule 59 motion for a new trial on the grounds that the verdict was against the weight of the evidence differs in two significant ways from the standards governing a Rule 50 motion for judgment as a matter of law. Unlike judgment as a matter of law, a new trial may be granted even if there is substantial evidence supporting the jury's verdict. Moreover, a trial

2

> judge is free to weigh the evidence himself, and need not view it in the light most favorable to the verdict winner. . . . A court considering a Rule 59 motion for a new trial must bear in mind, however, that the court should only grant such a motion when the jury's verdict is "egregious." . . . Accordingly, a court should rarely disturb a jury's evaluation of a witness's credibility.

*Id.* at 133–34 (internal citations omitted).

Here, for all the reasons set forth in defendants Fed. R. Civ. P. 50 motion for judgment as a matter of law filed herewith (ECF No. 598), there was simply no evidence offered that could support a claim that any of the three Defendants who were found liable violated the Eighth Amendment or that could support a claim that these Defendants were not shielded by qualified immunity. Finally, there was no evidence offered that could support a claim that any of these Defendants' conduct exhibited the malice, ill will, spite or callous disregard for the rights of other required for an award of punitive damages – let alone an award such as the jury awarded in this case. Certainly, the verdict in this case was against the weight of the evidence and the Defendants respectfully contend that a new trial is justified in this case. Finally, the amount of the punitive damage award is excessive and shocks the conscience.

Here, the award – and amount of the award – indicates that the jury arrived a seriously erroneous verdict. Defendants Quiros, Mulligan, and Robles also respectfully challenge the amount of the punitive damage award. When a defendant's Rule 59 motion contests the size of a damage award, a court must decide whether or not the verdict is excessive. *Stern v. Michelangelo Apartments, Inc.*, No. 97–CV–9532 GAY, 2000 WL 33766107, *6 (S.D.N.Y. Jan. 24, 2000). "If a

3

district court finds that a verdict is excessive, it may order a new trial, a new trial limited to damages, or, under the practice of remittitur, may condition a denial of a motion for a new trial on the plaintiff's accepting damages in a reduced amount." *Tingley Sys. v. Norse Sys.*, 49 F.3d 93, 96 (2d Cir. 1995). It may not, however, reduce the damages without offering the prevailing party the option of a new trial. *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 914–15 (2d Cir. 1997). A jury's damage award is excessive when "the award is so high as to shock the judicial conscience and constitute a denial of justice." *O'Neill v. Krzeminski*, 839 F.2d 9, 13 (2d Cir. 1988) (quoting *Zarcone v. Perry*, 572 F.2d 52, 56 (2d Cir. 1978)). Further, "[a] damage award is excessive if it is the result of a miscarriage of justice and represents a windfall to the plaintiff without regard to [his] injury." *Oliver v. Cole Gift Ctrs., Inc.*, 85 F. Supp. 2d 109, 114 (D. Conn. 2000).

> **B.      A New Trial is Warranted Because the Verdict is Against the Weight of the Evidence and Further That There is No Support for a Punitive Damage Award**

Defendants Quiros, Mulligan, and Robles move for a new trial first because the verdict was substantially against the weight of the evidence. Mr. Baltas failed to exhaust all claims related to his time confined in his cell among other claims. The only three claims before the jury were the claims relating to cancellation of recreation, nutritional adequacy of the food, and mud on his cell window. In spite of the narrow issues in the case, the plaintiff was permitted over Defendants' objections to offer testimony and argument concerning time confined inside the cell and through his expert, the effects of "solitary confinement".

The Defendants respectfully contend that this Court's narrowing of permissible testimony concerning why Mr. Baltas was subject to a more restrictive environment led to a result that was against the weight of the evidence for the claims at issue before this jury. The Defendants also believe that allowing the plaintiff to offer testimony regarding "solitary confinement," necessitated a jury interrogatory to explore whether the jury impermissibly expanded the recreation claim which the plaintiff had exhausted, and was allowed to present. The defendants respectfully contend that the verdict is erroneous and would result in a miscarriage of justice.

C.      **Remittitur of the Punitive Damage Awards is Appropriate**

Should the court deny Defendant's motion for a new trial, the Defendants move this court to grant the request for remittitur. Fed. R. Civ. P. 59 practice in the federal courts is akin to the common law practice of remittitur, which the Second Circuit Court of Appeals has observed "is the process by which a court compels a plaintiff to choose between reduction of an excessive verdict and a new trial." *Shu-Tao Lin v. McDonnell Douglas Corp.*, 742 F.2d 45, 49 (2d Cir. 1984). In ruling on a motion for remittitur, the court must determine "whether the award is so high as to shock the judicial conscience and constitute a denial of justice.... [T]he determination of whether a damages award exceeds a reasonable range should not be made in a vacuum, but should include consideration of the amounts awarded in other, comparable cases." *Mathie v. Fries*, 121 F.3d 808, 813 (2d Cir. 1997) (citations and internal quotations omitted).

"If a court finds a jury award excessive, it is the court's duty to require a remittitur or order a new trial." *Atlas Food Sys. & Servs., Inc. v. Crane Nat'l Vendors, Inc., 65* U.S.L.W. 2308 (4th Cir. Oct. 30, 1996) (No. 95-1717). In calculating the amount of a remittitur, a district court should reduce the jury's award "to the maximum amount that would be upheld by the district court as not excessive." *Earl v. Bouchard Transp. Co.*, 917 F.2d 1320, 1330 (2d Cir. 1990) The Second Circuit has recognized that appellate courts are increasingly willing to review damage awards and the court's guidance is particularly appropriate here: "[t]here is no doubt that this trend is a response to the increasingly outrageous amounts demanded by plaintiffs and awarded by juries. A jury has very broad discretion in measuring damages; nevertheless, *a jury may not abandon analysis for sympathy for a suffering plaintiff and treat the injury as though it were a winning lottery ticket.*" (Emphasis added.) *Nairn v. Nat'l R. Passenger Corp.*, 837 F.2d 565, 568 (2d Cir. 1988).

> a. *The Punitive Damages Award is Excessive*

Respectfully, the court should remit the punitive damages award. A jury may "assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56, 103 S. Ct. 1625, 75 L. Ed. 2d 632 (1983). In this case, there was simply no evidence that any defendant possessed any evil motive or intent. Therefore, the

defendants respectfully contend that there is simply no evidence to support any award of punitive damages.

"[A] degree of excessiveness less extreme than 'grossly excessive' will justify a finding that supports imposing a remittitur." *Payne v. Jones*, 711 F.3d 85, 97 (2d Cir. 2012). "Federal judges may, and should, insist that the award be sensible and justified by a sound theory of deterrence. Random and freakish punitive awards have no place in federal court, and intellectual discipline should be maintained." *Perez v. Z Frank Oldsmobile, Inc.*, 223 F.3d 617, 625 (7th Cir. 2000).

The standard for determining whether an award of punitive damages is excessive is "whether the award is so high as to shock the judicial conscience and constitute a denial of justice." *DiSorbo v. Hoy*, 343 F.3d 172, 186 (2d Cir. 2003). The Supreme Court has identified three "guideposts" for determining whether a punitive damages award is excessive: 1) the degree of reprehensibility; 2) the disparity between the harm or potential harm and the punitive damages award; and 3) the difference between the remedy and the civil penalties authorized or imposed in comparable cases. *BMW of North America, Inc. v. Gore,* 517 U.S. 559, 574-75, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996). The Second Circuit explained that the *Gore* decision "seems to support an increased judicial readiness to curtail any excessiveness." *Payne*, 711 F.3d at 97. As discussed below, the court should vacate the punitive award.

### b. Defendants' Conduct was not Reprehensible

"Perhaps the most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct." *Bmw of N. Am. v. Gore*, 517 U.S. 559, 575, 116 S. Ct. 1589 (1996). Reprehensibility in this context entails more than merely asking whether the conduct was unacceptable. *Lee v. Edwards*, 101 F.3d 805, 809 (2d Cir. 1996). The fact that conduct is sufficiently reprehensible so as to trigger tort liability and damages "does not establish the high degree of culpability that warrants a substantial punitive damages award." *Bmw of N. Am.*, 517 U.S. at 580, 116 S. Ct. 1589. The Court in *Gore* identified certain aggravating factors to be considered when assessing the degree of reprehensibility: 1) whether a defendant's conduct was violent or presented a threat of violence; 2) whether a defendant acted with malice as opposed to mere negligence; and 3) whether a defendant has engaged in repeated instances of misconduct. *Id.* at 576, 116 S. Ct. 1589.

In this case, there are quite simply no aggravating factors attributable to Quiros, Mulligan, or Robles. None of the aggravating factors of *Gore* are present here. First, the evidence did not establish that any of the defendants' conduct demonstrated any violent conduct or presented a threat of violence. Second, there was no evidence that defendants acted with malice. Third, there was no evidence that Defendants had engaged in any repeated acts of misconduct. There is simply no evidence to support any award of punitive damages or alternatively can only support a significantly reduced award.

>    *i.  The Punitive Award is Excessive in Light of the Injury*
>        *Alleged*

In this case, the punitive damage award is grossly excessive in relation to the complete absence of physical injuries sustained by the alleged violation. When assessing the reasonableness of punitive damages, courts compare the compensatory and punitive awards. To assess the appropriateness of the ratio of punitive damages award to the harm, "the proper inquiry is 'whether there is a reasonable relationship between the punitive damages award and *the harm likely to result* from the defendant's conduct as well as the harm that actually has occurred.'" *Gore,* 517 U.S. at 581, 116 S.Ct. 1589 (quoting *Txo Prod. Corp. v. All. Res. Corp.*, 509 U.S. 443, 460, 113 S. Ct. 2711, 125 L. Ed. 2d 366 (1993)).

The Supreme Court has been "reluctant to identify concrete constitutional limits" for the ratio of punitive to compensatory damages. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 424, 123 S. Ct. 1513, 155 L. Ed. 2d 585 (2003). However, the Supreme Court has recognized that an important consideration in determining whether the ratio is permissible in a given case is the size of the compensatory damage award. Id. at 425. That is, although a higher ratio may be appropriate where "a particularly egregious act has resulted in only a small amount of economic damages," "[w]hen compensatory damages are substantial, then a lesser ratio, perhaps only equal to compensatory damages, can reach the outermost limit of the due process guarantee." *Id.; see also, Thomas v. iStar Thomas v. iStar Fin., Inc.*, 652 F.3d 141, 149 (2d Cir. 2010) (noting that "an award of more than four times the amount of compensatory damages might be close to the line of

constitutional impropriety" (internal quotation marks omitted)); *Carroll v. Trump*, 151 F.4th 50, 84-85 (2d Cir. 2025) (ratio of 3.6:1 "approached the upper limit of reasonableness").

### ii.    There is no Civil Penalty for the Defendants' Conduct

In *Gore,* the Supreme Court stated that "[c]omparing the punitive damages award and the civil or criminal penalties that could be imposed for comparable misconduct provides a third indicium of excessiveness." *Bmw of N. Am.*, 517 U.S. at 583, 116 S. Ct. 1589. The Court established this as a third indicium of excessiveness in order to "accord substantial deference to legislative judgments concerning appropriate sanctions for the conduct at issue." *Id.* (internal quotation marks and citation omitted). In this case, this element has no bearing on the analysis.

### iii.    A Review of Comparable Cases Supports Finding That the Award was Excessive.

The Second Circuit has "found it helpful in deciding whether a particular punitive award is excessive to compare it to court rulings on the same question in other cases." *Payne*, 711 F.3d at 104; *see also, e.g.,* L*ee,* 101 F.3d at 812 ("To sort this out, it is appropriate for us to examine punitive damage awards in similar cases."). As of 2012, the Second Circuit had "never approved a punitive award against an individual police officer as large as the $300,000 . . . [and has] described awards ranging from $125,000 to $175,000 as substantial.'" *Id.* at 105. As described below, the punitive award is grossly excessive and should be eliminated.

In cases against law enforcement, courts have reduced punitive awards in cases involving far more egregious and malicious conduct on behalf of the

defendants than the defendant's actions here and, in many instances, where the punitive award was less than the punitive award in this case. In *Mathie*, the defendant correction officer had repeatedly sexually assaulted an inmate and, on one occasion, handcuffed the inmate to his cell and sodomized him, resulting physical pain and bleeding. *Mathie*, 121 F.3d at 810-11. Although the Second Circuit described the officer's conduct as an "outrageous abuse of power and authority," Judge Newman found that the $500,000 punitive award was excessive and reduced it to $200,000. *Id.* at 816-17.

In *Williams v. Marinelli*, No. 3:13-cv-1154 (MPS), 2017 WL 11473740 (D. Conn. Feb. 8, 2017) this Court reduced the punitive award involving significantly more egregious conduct on the part of the defendant from $400,000.00 to $50,000.00 referencing a string of egregious cases involving awards significantly less than what this jury awarded to the plaintiff Baltas in the pending case.

In *Morales,* the plaintiff alleged that the police officer approached her, grabbed her shoulders and arms, and used "all" of his force before placing the plaintiff in the back seat of his car. *Morales v. City of N.Y.*, No. 99 CIV. 10004 (DLC), 2001 WL 8594, at *1 (S.D.N.Y. Dec. 29, 2000) (describing an incident in which an undercover police officer arrested and released a woman after searching her for drugs). The evidence established that the plaintiff suffered "dark bruises" on her legs and right arm and had to receive counseling for seven or eight months with a Victim Services social worker. *Id.* at *2. The court eliminated the $7,000 punitive award because there was no evidence that the officer "deliberately or willfully

11

injured" the plaintiff, although his conduct may have been "unnecessarily rough." *Id.* at *7. *See also DiSorbo*, 343 F.3d at 187-89 (reducing $1.275 million punitive award to $75,000 where officer "violently slammed [plaintiff] against the wall, choked her to the point where she began to lose vision, pushed her to the ground, and struck her while she was on the ground"); *Payne*, 711 F.3d at 88, 106 (reducing $300,000 punitive award to $100,000 where officer struck plaintiff "in the face and neck seven to ten times and knee[d] him in the back several times" which "aggravated his existing back pain and his post-traumatic stress disorder").

Similarly, juries have awarded lesser punitive awards in cases involving much more culpable conduct on behalf of defendants. *Blackledge v. Carlone*, 126 F. Supp. 2d 224, 225, 228-31 (D. Conn. 2001) (awarding $40,000 punitive award where officer pepper sprayed plaintiff, handcuffed plaintiff behind her back and placed her in back of police cruiser, and then sprayed her again); *Ziemba v. Armstrong*, 433 F. Supp. 2d 248, 255-56 (D. Conn. 2006) (awarding $150,000 punitive award where the correction officer punched the plaintiff in the face and pressed it down on a solid steel bed while the plaintiff was restrained and not resisting and used "nerve compression technique that involved digging his thumb into [the plaintiff's] head just behind his ear"); *Ismail v. Cohen*, 899 F.2d 183, 187 (2d Cir. 1990) ($150,000 punitive damages award upheld where plaintiff was assaulted during arrest by police officer, suffering two displaced vertebra, a cracked rib, and serious head trauma, was wrongfully charged with several offenses, and was jailed for 60 hours); *see King v. Verdone*, No. 3:97CV1487(DJS), 1999 WL 33432177, at *6 (D. Conn.

12

Sept. 29, 1999) (reducing $1 million in punitive damages against each defendant to $150,000 in case where inmate claimed correction officers violated the Eighth Amendment); *Romaine v. Rawson*, 140 F. Supp. 2d 204, 214 (N.D.N.Y. 2001) (awarding prison inmate $500 for punitive damages, where he was physically struck across the left side of his face three times by corrections officer).

In many of the cases cited above, the defendants exhibited brutal, violent, and repulsive behavior. In this case, there was no evidence adduced at trial that Defendants Quiros, Mulligan, or Robles exhibited any such behavior. Despite that evidence, the jury still awarded greater punitive damages than many of the cases cited above. For instance, in *Mathie*, the Court found that $200,000.00 was appropriate punitive damages in a case involving an incident when a correction officer handcuffed an inmate to his cell and anally raped him. The defendants submit that this case is more akin to *Morales,* when the court wholly eliminated punitive damages from the case. Similar to the defendant in *Morales*, there was no evidence in this trial that Defendants Quiros, Mulligan, or Robles "deliberately or willfully injured" the plaintiff. Accordingly, the defendants respectfully submit that the court eliminate the punitive damages award here.

## D. CONCLUSION

Wherefore, based on the foregoing arguments, Defendants Quiros, Mulligan, and Robles move the court to grant a new trial and/or a remittitur of compensatory and punitive damages pursuant to Fed. R. Civ. P. 59 as the awards are so high as to shock the judicial conscience and constitutes a denial of justice.

13

*Respectfully submitted,*

DEFENDANTS

WILLIAM TONG
ATTORNEY GENERAL

BY: /s/ *Dennis V. Mancini*

Dennis V. Mancini (ct30239)
Assistant Attorney General
State of Connecticut
Office of the Attorney General
165 Capitol Avenue
Hartford, CT 06106
E-Mail: dennis.mancini@ct.gov
Tel: (860) 808-5450
Fax: (860) 808-5591

/s/ *Steven M. Barry*

Steven M. Barry (ct07825)
Assistant Attorney General
State of Connecticut
Office of the Attorney General
165 Capitol Avenue
Hartford, CT 06106
E-Mail: steven.barry@ct.gov
Tel: (860) 808-5450
Fax: (860) 808-5591

14

## CERTIFICATION

I hereby certify that on June 19, 2026, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

*/s/ Dennis V. Mancini*

Dennis V. Mancini
Assistant Attorney General

15